United States District Court
Southern District of Texas
**ENTERED**
December 20, 2021
Nathan Ochsner, Clerk

UNITED  STATES  DISTRICT  COURT
SOUTHERN  DISTRICT  OF  TEXAS
MCALLEN  DIVISION

| | | |
|---|---|---|
| UNITED  STATES  OF  AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL  ACTION  NO.  7:20-cv-00154 |
| | § | |
| 4.620 ACRES  OF  LAND,  more or less, in | § | Lead Case |
| HIDALGO  COUNTY,  TEXAS;  and | § | |
| FULLER  FARMS, | § | |
| | § | |
| Defendants. | § | |
| UNITED  STATES  OF  AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL  ACTION  NO.  7:20-cv-00170 |
| | § | |
| 8.570 ACRES  OF  LAND,  more or less, in | § | Member Case |
| HIDALGO  COUNTY,  TEXAS;  and | § | |
| FULLER  FARMS, | § | |
| | § | |
| Defendants. | § | |

## OPINION  AND  ORDER

The  Court  now  considers  "Defendant's  Motion  for  Partial  Summary  Judgment,"[1] Plaintiff's  response,[2]  and  Defendant's  reply.[3]  The  Court  also  considers  Plaintiff  "United  States  of America's  Rule  71.1(h)  Motion  to  Exclude  Defendant  Fuller  Farms'  Expert  Testimony  of  Leonel Garza  III,"[4]  Defendant's  response,[5]  and  Plaintiff's  reply.[6]  After  considering  the  motion,  record,

---

[1] Dkt. No. 53.
[2] Dkt. No. 56.
[3] Dkt. No. 60.
[4] Dkt. No. 54.
[5] Dkt. No. 57.
[6] Dkt. No. 61.

and relevant authorities, the Court **DENIES** Defendant's motion for partial summary judgment and **GRANTS IN PART** Plaintiff's motion to exclude.

## I. Background and Procedural History

This is an eminent domain case. On June 11, 2020, the United States commenced civil action number 7:20-cv-00154 to take the 4.620-acre Tract RGV-MER-4009-1 in fee simple with certain reservations.[7] On June 24, 2020, the United States commenced civil action number 7:20-cv-00170 to take the 6.126-acre Tract RGV-MER-3002-1 and the 2.444-acre Tract RGV-MER-3002-2.[8] The two cases involved the same Defendant, Fuller Farms, and Plaintiff and Defendant jointly moved to consolidate the two cases.[9] The Court consolidated the cases on December 17, 2020.[10] On January 8, 2021, Plaintiff United States filed an amended complaint "to update the legal description and maps of land to be condemned only for Tract RGV-MER-3002-2," which is the live complaint with respect to that tract.[11]

On the dispositive motion deadline,[12] the parties filed the instant motions, which are now ripe for consideration. The Court first turns to Plaintiff United States' motion to exclude because it attacks the evidence before the Court for purposes of summary judgment, then to Defendant's motion for summary judgment.

---

[7] Dkt. No. 1.
[8] *United States v. 8.570 Acres of Land*, No. 7:20-cv-00170 (S.D. Tex. June 24, 2020), Dkt. No. 1.
[9] Dkt. No. 28.
[10] Dkt. No. 29.
[11] Dkt. No. 32.
[12] *See* Dkt. No. 45 at 4.

## II. PLAINTIFF'S MOTION TO EXCLUDE

### a. Legal Standard

"[T]he Federal Rules of Evidence control the admission of expert testimony."[13]  The Rules and judicial scrutiny extend to all experts, whether scientific or otherwise.[14]  "[P]reliminary factual and legal issues are the Court's responsibility under [Federal Rule of Civil Procedure 71.1(h)], whether trial is had before a jury or a commission."[15]  When an expert's "factual basis, data, principles, methods, or their application" are sufficiently called into question,[16] the Court must undertake a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."[17]  "The gatekeeping role of the district court is particularly pronounced in condemnation proceedings under Rule 71.1. While the jury tries issues of valuation, the trial judge must screen the proffered" evidence.[18]  The Court must first determine, under Federal Rules of Evidence 104(a) and 402, that the expert's proposed testimony is relevant and would assist with determining a fact at issue.[19]  Evidence that is not both is not admissible.[20]  "Expert

---

[13] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459 (5th Cir. 2002).

[14] *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 580–81 (5th Cir. 2001) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).

[15] *United States v. 320.0 Acres of Land, more or less in Monroe Cty.*, 605 F.2d 762, 827 (5th Cir. 1979).

[16] *Rodriguez*, 242 F.3d at 581 (quotation omitted).

[17] *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592–93 (1993).

[18] *United States v. 33.92356 Acres of Land, more or less, in Vega Baja*, 585 F.3d 1, 8 (1st Cir. 2009) (citing *320.0 Acres of Land*, 605 F.2d at 815)); *see United States v. Reynolds*, 397 U.S. 14, 20 (1970) ("[T]he sweeping language of the final sentence of the Rule [71.1] discloses a clear intent to give the district judge a role in condemnation proceedings much broader than he occupies in a conventional jury trial.").

[19] *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 529 (5th Cir. 2015) (quoting *Bocanegra v. Vicmar Servs.*, 320 F.3d 581, 584 (5th Cir. 2003)) (rejecting conclusory testimony as irrelevant); *cf. United States v. Gluk*, 831 F.3d 608, 615 (5th Cir. 2016) (reversing the exclusion of SEC investigators' evidence); *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) (alteration and quotation omitted) ("The contradictions coupled with the lack of support for the statements take them out of the realm of substantive evidence. In the context of admissibility of expert testimony, this court has noted that if an opinion is fundamentally unsupported, then it offers no expert assistance to the jury."); *Pedraza v. Jones*, 71 F.3d 194, 197 (5th Cir. 1995) (cleaned up) ("To qualify as an expert, the witness's testimony must both rest on a reliable foundation and be relevant to the task at hand.").

[20] *Perez v. Tex. Dep't of Crim. Just., Inst. Div.*, 395 F.3d 206, 210 (5th Cir. 2004) (citing FED. R. EVID. 401).

testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful. Similarly, low probative value, or a total lack of it, will render proposed expert testimony unhelpful and, therefore, inadmissible under Federal Rule of Evidence 702."[21] The Court scrutinizes proposed expert testimony more searchingly than lay witness testimony for its pertinency and potential prejudice.[22]

Additionally, "[u]nder the Rules[,] the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."[23] "Experts qualified by knowledge, skill, experience, training or education may present opinion testimony to the jury"[24] only if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."[25] The proponent of the proffered expert testimony "must prove by a preponderance of the evidence that the testimony is reliable" and cannot rest on generic assurances.[26] Under the first element, "the existence of sufficient facts . . . is in all instances

---

[21] 4 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE, § 702.02[5] (Mark S. Brodin, ed., 2d ed. 1997) (cleaned up), *quoted in Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 591 (1993); *see EEOC v. U-Haul Co. of Tex.*, No. 4:04-cv-3788, 2005 WL 2860987, at *2 (S.D. Tex. Nov. 1, 2005) (Hittner, J.) (quoting *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000)) ("Expert testimony assists the trier-of-fact when the expert's knowledge and experience on a relevant issue are beyond that of the average juror and the testimony helps the trier-of fact understand the evidence or determine a fact issue. When the jury is equally competent to form an opinion about the ultimate fact issues or the expert's testimony is within the common knowledge of the jury, the trial court should exclude the expert's testimony.").

[22] *Rule 702 of the Federal Rules of Evidence Is Sound; It Should not be Amended*, 138 F.R.D. 631, 632 (1991) (Weinstein, J.), *quoted in Daubert*, 509 U.S. at 595. *But see Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case . . . where a district judge sits as the trier of fact in place of a jury.").

[23] *Daubert*, 509 U.S. at 589; *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quotation omitted) (holding the Rules "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand").

[24] *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quotation omitted). *But see Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 623–24 (5th Cir. 2018) (cleaned up) ("Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Although an expert's qualifications may be less-than-sterling, she may still be certified. This is because differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility.").

[25] *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007) (quoting FED. R. EVID. 702).

[26] *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

mandatory."[27] Unsubstantiated factual assertions will bar expert testimony,[28] as will "altered facts and speculation designed to bolster [the proponent's] position."[29] Expert opinions that are unsupported, self-contradicted, or assumptive are to be excluded.[30] However, the proponent "need not prove the testimony is factually correct, but rather need only prove by a preponderance of the evidence the testimony is reliable."[31] The Court should "approach its inquiry with the proper deference to the jury's role as the arbiter of disputes between conflicting opinions."[32] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."[33] Indeed, the Fifth Circuit has cautioned against transforming a motion to exclude an expert into a trial on the merits, because the factfinder may be entitled to accept or reject an expert's testimony *including* by judging whether the predicate facts on which an expert relied are accurate.[34] In short, experts may rely on disputed facts,[35] but not unsubstantiated assertions. Cross-examination and

---

[27] *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007).

[28] *Id.* at 319 & n.4.

[29] *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996); *see Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 798 (N.D. Tex. 2013) (citing *MGM Well Servs. v. Mega Lift Sys.*, No. 4:05-cv-1634, 2007 WL 150606, at *4 (S.D. Tex. Jan. 16, 2007) (Atlas, J.)) ("Although in forming an independent opinion an expert can rely on information provided by a party's attorney, an expert cannot forgo his own independent analysis and rely exclusively on what an interested party tells him.").

[30] *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005).

[31] *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009).

[32] *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

[33] *United States v. 14.38 Acres of Land, more or less Situated in Leflore Cnty.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo*, 826 F.2d at 422); *see* FED. R. EVID. 702 advisory committee's note to 2000 amendment ("When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on ' sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.").

[34] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002).

[35] *Metro Hosp. Partners, Ltd. v. Lexington Ins. Co.*, No. 4:15-cv-1307, 2017 WL 3142444, at *6 (S.D. Tex. July 25, 2017) (Rosenthal, C.J.) (citing *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (per curiam) and *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004)); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010) (citing *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003) and *Pipitone*, 288 F.3d at 249–50) ("[I]t is not the district court's role under *Daubert* to evaluate the correctness of facts underlying an expert's testimony. Questions about what facts are most relevant or reliable to calculating a reasonable royalty are for the jury. The jury was entitled to hear the expert testimony and decide for itself what to accept or reject."), *aff'd*, 564 U.S. 91 (2011).

presentation of competing evidence are traditionally sufficient to challenge an expert opinion, rather than exclusion for inadmissibility.[36] "It is the role of the adversarial system, not the court, to highlight weak evidence."[37]

Under the second and third elements for assessing expert evidence, "expert testimony 'must be reliable at each and every step or else it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*.'"[38] "Under *Daubert*, '*any* step that renders the analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology."[39] To test reliability, the Court assesses the intellectual rigor of the proposed expert testimony,[40] which must be validated by an independent and objective source beyond the expert's assurances,[41] and the Court "should ensure that the [expert] opinion comports with applicable professional standards outside the courtroom and that it will have a reliable basis in the knowledge and experience of [the] discipline."[42] However, an expert report or opinion need not be in lockstep with the common

---

[36] *See MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 852 (5th Cir. 2015) (quoting *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 596 (1993)); *see 14.38 Acres of Land*, 80 F.3d at 1078 ("[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.").

[37] *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).

[38] *In re Pool Prod. Distrib. Mkt. Antitrust Litig.*, 166 F. Supp. 3d 654, 662 (E.D. La. 2016) (quoting *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007)).

[39] *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 278 n.10 (5th Cir. 1998) (omission in original) (emphasis deleted) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994)).

[40] *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

[41] *Brown v. Ill. Cent. R.R.*, 705 F.3d 531, 536 (5th Cir. 2013) (quoting *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)); *see Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (alteration and quotation omitted) ("But the existence of sufficient facts and a reliable methodology is in all instances mandatory. Without more than credentials and a subjective opinion, an expert's testimony that "it is so" is not admissible.").

[42] *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997) (second alteration in original) (quotation omitted); *see McManaway v. KBR, Inc.*, 852 F.3d 444, 449 (5th Cir. 2017) (cleaned up) (holding that courts "look to the basis of the expert's opinion, and not the bare opinion alone. A claim cannot stand or fall on the mere *ipse dixit* of a credentialed witness."); *cf. Mayor of City of Phila. v. Educ. Equal. League*, 415 U.S. 605, 621 (1974) ("[T]he District Court's concern for the smallness of the sample presented by the 13-member Panel was also well founded."); *accord Conlay v. Baylor Coll. of Med.*, 688 F. Supp. 2d 586, 595 (S.D. Tex. 2010) (Smith, J.) (collecting cases).

or prevailing standard to be admissible.[43] "Certain more specific factors, such as testing, peer review, error rates, and 'acceptability' in the relevant scientific community . . . might prove helpful in determining the reliability of a particular scientific 'theory or technique.'"[44] Reliance on studies that do not support a contention, cherry-picked data, or a dubious methodology may be grounds to reject expert testimony.[45] Additionally, the Court should exclude expert evidence if the witness is not qualified in a particular field or subject,[46] but an expert witness need not be highly credentialed or specially qualified to offer an expert opinion to the factfinder.[47] The Court may "conclude that there is simply too great an analytical gap between the data and the opinion proffered" to be admissible,[48] but there is no definite formula for determining whether expert testimony is reliable or unreliable "and the court must judge admissibility based on the particular facts of the case."[49] The test is, at bottom, "a flexible one,"[50] so "[t]rial judges retain 'broad latitude' both in deciding

---

[43] *Whitehouse Hotel LP v. Comm'r*, 615 F.3d 321, 332 (5th Cir. 2010) (rejecting the argument that compliance with uniform published professional standards goes to admissibility rather than credibility); *see Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 588 (1993) ("Nothing in the text of this Rule establishes 'general acceptance' as an absolute prerequisite to admissibility."); *Hardy v. United States*, 141 Fed. Cl. 1, 32 (2018) ("The Yellow Book [Uniform Appraisal Standards for Federal Land Acquisitions] applies only to appraisers hired by the federal government for condemnation purposes; it is not mandatory with respect to appraisers not hired by the government.").

[44] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 593–94 (1993)).

[45] *Burst v. Shell Oil Co.*, 650 F. App'x 170, 174 (5th Cir. 2016) (per curiam).

[46] *See Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007) (affirming exclusion of expert evidence because "Moore is not a tire expert. He has never been employed in any capacity dealing with the design or manufacture of tires. He has never published any articles regarding tires nor has he ever examined a tire professionally prior to this litigation. His only experience with tires is as a consumer.").

[47] *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199–200 (5th Cir. 2016); *see Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 624–25 (5th Cir. 2018) (rejecting the argument that expert qualifications must be narrowly tailored to the matter at hand before an expert is qualified to testify); *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195 (5th Cir. 2018) (per curiam) (quotations omitted) ("A lack of specialization should generally go to the weight of the evidence rather than its admissibility, and an expert witness is not strictly confined to his area of practice, but may testify concerning related applications.").

[48] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see id.* ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.")

[49] *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 379 (5th Cir. 2010).

[50] *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 594 (1993).

how to determine whether an expert's testimony is reliable, and ultimately, whether the testimony is, in fact, reliable."[51]

The Court is particularly hesitant to exclude a defendant landowner's expert evidence in eminent domain cases because the Fifth Circuit has instructed:

> The value of property taken by the Government, which is no longer on the market, is largely a matter of opinion. Since there are no infallible means for determining with absolute conviction what a willing buyer would have paid a willing seller for the condemnee's property at the time of taking, eminent domain proceedings commonly pit the Government's valuation experts against those of the landowner. Thus, the exclusion of one or all of either party's proposed experts can influence substantially the amount of compensation set by the factfinder. . . . Recognizing the critical role of expert witnesses in these cases and the strong interest on both sides that compensation be just, trial courts should proceed cautiously before removing from the jury's consideration expert assessments of value which may prove helpful.[52]

"[I]f suitability for a particular use might reasonably affect fair market value in the sense that a just compensation award based in part upon the potential for that use would not be invalid as a matter of law then evidence pertaining to that use must be admitted for consideration by the trier of fact."[53] Nevertheless, "[c]onsiderations that may not reasonably be held to affect market value are excluded."[54]

### b.  Analysis

[51] *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 194 (5th Cir. 2006) (quoting *Kumho Tire Co.*, 526 U.S. at 142); *accord St. Martin v. Mobil Expl. & Producing U.S. Inc.*, 224 F.3d 402, 406 (5th Cir. 2000) (quoting *Watkins v. Telsmith Inc.*, 121 F.3d 984, 988 (5th Cir. 1997)) ("District courts enjoy wide latitude in determining the admissibility of expert testimony, and the discretion of the trial judge and his or her decision will not be disturbed on appeal unless manifestly erroneous.").

[52] *United States v. 14.38 Acres of Land, more or less situated in Leflore Cnty.*, 80 F.3d 1074, 1077–78 (5th Cir. 1996) (quoting *United States v. 68.94 Acres of Land, more or less, situate in Kent Cnty.*, 918 F.2d 389, 393 (3d Cir. 1990)).

[53] *United States v. 320.0 Acres of Land, more or less in Monroe Cnty.*, 605 F.2d 762, 817 (5th Cir. 1979); *see id.* at 815 ("[I]f the landowner's evidence is sufficient to show that a prospective use is feasible and reasonably probable, the landowner is then entitled to have that evidence considered by the jury (or the commission)."); *McCandless v. United States*, 298 U.S. 342, 346 (1936) ("An offer of proof cannot be denied as remote or speculative because it does not cover every fact necessary to prove the issue.").

[54] *United States v. 50 Acres of Land*, 469 U.S. 24, 29 (1984) (quoting *Olson v. United States*, 292 U.S. 246, 256 (1934)).

Appraisals are conventional expert evidence in an eminent domain case.[55] Plaintiff United States moves to exclude Defendant Fuller Farms' appraisal expert Leonel Garza III and his appraisal reports for all three tracts at issue in this action.[56] Plaintiff first argues that Mr. Garza failed to "perform a proper 'before and after' analysis" in his expert reports that is required by the Fifth Circuit, so his entire report is rendered inadmissible.[57] Defendant concedes that Mr. Garza's appraisal reports "do not have a strict before and after valuation," but argues that his reports nevertheless use "the equivalent of the before-and-after method."[58] In reply, Plaintiff emphasizes that the before-and-after method is the exclusive mode of determining just compensation in the Fifth Circuit and only implies that Mr. Garza's calculation is not the equivalent of the before-and-after method.[59]

First, the Fifth Circuit does require the *exclusive* use of the before-and-after method of computing damages after a taking.[60] However, contrary to Plaintiff's assertion,[61] this Court has confronted this exact issue before and concluded that the "value-plus-severance" method of calculating damages is the functional equivalent of the before-and-after method.[62] Leonel Garza III's computation of damages is expressed in his expert reports as follows:

| COMPENSATION & MARKET VALUE SUMMARY | | COMPENSATION VALUATION SUMMARY | |
|---|---|---|---|
| Whole Property | $ 918,930 | Whole Property | $ 1,216,475 |
| Part to Be Acquired | $ 13,860 | Part to Be Acquired | $ 47,135 |
| Remainder Before | $ 905,070 | Remainder Before | $ 1,169,340 |

---

[55] *See United States v. Va. Elec. & Power Co.*, 365 U.S. 624, 632 (1961).
[56] Dkt. No. 54 at 1.
[57] *Id.* at 10, ¶ 17.
[58] Dkt. No. 57 at 8, ¶¶ 15–17.
[59] Dkt. No. 61 at 2, ¶ 1.
[60] *United States v. 8.41 Acres of Land, more or less, situated in Orange Cnty.*, 680 F.2d 388, 392 n.5 (5th Cir. 1982).
[61] Dkt. No. 61 at 2, ¶ 1.
[62] *United States v. 5.65 Acres of Land in Starr Cnty.*, No. 7:08-cv-00202, 2020 WL 5105206, at *8 (S.D. Tex. Aug. 31, 2020) (Alvarez, J.) (collecting cases).

| Remainder After | $ 558,162 | Remainder After | $ 1,114,494 |
| Diminution / Damages | $ 346,908 | Diminution / Damages | $ 54,846 |
| Cost to Cure | $ 0.00 | Cost to Cure | $ 0.00 |
| Total Compensation | $ 360,768[63] | Total Compensation | $ 101,981[64] |

As Defendant points out, Mr. Garza's computation consists of the before value, the "Whole Property," and the after value, the "Remainder After," and his total damages are the difference between these two figures.[65] This is a proper application of the before-and-after method.[66]

Plaintiff United States next argues that Defendant's expert failed to comply with professional appraisal standards represented by the "Uniform Standards of Professional Appraisal Practice (USPAP) and the Uniform Appraisal Standards for Federal Land Acquisitions."[67] Despite citing the case,[68] the United States apparently failed to recognize that the Court has rejected the argument that a landowner's expert must comply with either Uniform Standards manual.[69] Again, a landowner's expert's failure to scrupulously meet every Uniform Standard does not render the expert's testimony inadmissible.[70] "The approach that *government appraisers* must follow in opining on the value of land taken by the federal government is found in the Uniform Appraisal Standards for Federal Land Acquisitions."[71] Plaintiff also attacks Mr. Garza's report's specific language, in which the report opens by explaining that it is to be used "to determine the current

---

[63] Dkt. No. 54-1 at 11.

[64] Dkt. No. 54-2 at 11.

[65] Dkt. No. 57 at 9, ¶ 18.

[66] *See 5.65 Acres of Land in Starr Cnty.*, 2020 WL 5105206, at *2 (quoting *United States v. 12.94 Acres of Land in the Cnty. of Solano*, No. CIV S-07-2172 FCDEFB, 2009 WL 4828749, at *5 (E.D. Cal. Dec. 9, 2009)) ("[U]nder the before-and-after rule, the value of the entire tract is found prior to the taking, the value of the remainder is evaluated after the taking, and the difference equals the amount to which the owner is entitled.").

[67] Dkt. No. 54 at 11, ¶ 20.

[68] Dkt. No. 56 at 10 n.36.

[69] *United States v. 2.6433 Acres of Land*, No. 7:08-cv-00302, 2021 WL 4729306, at *8 & n.100 (S.D. Tex. July 19, 2021) (Alvarez, J.).

[70] *See supra* note 43.

[71] *Tech. Coll. of the Low Country v. United States*, 145 Fed. Cl. 408, 426 (2019) (first emphasis added).

market value of the property in fee simple estate" and "for the determination of just compensation,"[72] because Mr. Garza may only estimate market value rather than determine just compensation. Plaintiff must know that this argument is frivolous. Mr. Garza's report appraises market values to aid in determining just compensation. It is not capable of being rendered inadmissible by assaulting the technical language used rather than the substantive analysis therein. The Court is disappointed by the United States' waste of time, resources, and taxpayer dollars in raising this argument.

Plaintiff next argues that Leonel Garza III's reports use the wrong date of taking.[73] Defendant concedes that the reports use one date of taking that is one week before the actual date of taking, and that another report uses a date of taking that is one month early, but argues that "[n]owhere does Plaintiff cite any authority for the proposition that this minor defect had any bearing on the value or conclusion, and there is none. The before and after valuation would not change if the dates of deposit were used."[74] Plaintiff replies that a proper appraisal report *must* use the correct date, and that Defendant's speculation that its expert's valuation would not change if he used the correct dates is speculative and unreliable.[75] Plaintiff relies on *Kirby Forest Industries, Inc. v. United States*, in which the Supreme Court held that "[j]ust compensation . . . means in most cases the fair market value of the property on the date it is appropriated."[76] "[T]he date of 'taking' is the date on which the Government entered and appropriated the property to public use."[77]

The Court rejects Plaintiff's argument. Title to or an interest in property taken does not vest in the government until the United States deposits the estimated just compensation.[78]

---

[72] Dkt. No. 54-1 at 2, *quoted in* Dkt. No. 54 at 11, ¶ 20.
[73] Dkt. No. 54 at 11, ¶ 20.
[74] Dkt. No. 57 at 10, ¶ 20.
[75] Dkt. No. 61 at 2–3, ¶ 2.
[76] *Kirby Forest Indus. v. United States*, 467 U.S. 1, 10 (1984) (quotation omitted).
[77] *United States v. Dow*, 357 U.S. 17, 23 (1958).
[78] 40 U.S.C. § 3114(b).

Nevertheless, the United States may "declar[e] that the land is taken for the use of the Government" upon filing its declaration of taking.[79] The United States filed its declaration of taking on June 11, 2020, concerning Tract RGV-MER-4009-1,[80] and deposited its estimated just compensation on June 18th,[81] then filed its declaration of taking on June 24th concerning Tracts RGV-MER-3002-1 and RGV-MER-3002-2[82] and thereafter deposited estimated just compensation on July 10th.[83] Mr. Garza only used the "Effective Date" of June 11, 2020, in his appraisal reports.[84] While the Court agrees with Plaintiff that Mr. Garza relies upon the wrong date of taking, the Court agrees with Defendant that there is no substantive impact on the reliability of Mr. Garza's appraisal reports. Mr. Garza uses comparable sales that date from April 2012 to January 2020.[85] The discrepancy of a week to a month between the date of taking and Mr. Garza's effective date has no apparent impact on Mr. Garza's expert report or conclusions. If a comparable sale after January 2020 affects the appraisal data, the United States may raise that argument at trial to attack Mr. Garza's credibility. Although Plaintiff may be technically correct that "Mr. Garza used the wrong date of value, period,"[86] this Rhadamanthine argument is far afield from demonstrating the *unreliability* of Mr. Garza's opinion and testimony.[87]

Plaintiff also argues that Leonel Garza III failed "to recognize that the Subject Property being appraised is impacted by both FEMA floodplain and IBWC floodway limitations" and failed to acknowledge the impact of water rights and availability on the valuations.[88] Defendant counters

---

[79] *Id.* § 3114(a).

[80] Dkt. No. 2.

[81] Dkt. No. 5.

[82] *United States v. 8.570 Acres of Land*, No. 7:20-cv-00170 (S.D. Tex. June 24, 2020), Dkt. No. 2.

[83] *Id.*, Dkt. No. 6.

[84] Dkt. No. 54-1 at 1; Dkt. No. 54-2 at 1.

[85] Dkt. No. 54-1 at 47; Dkt. No. 54-2 at 61.

[86] Dkt. No. 61 at 3, ¶ 2.

[87] *See supra* notes 31–33, 49.

[88] Dkt. No. 54 at 12, ¶ 20.

that Mr. Garza *did* consider the impact of flood zones and *did* consider the impact of water rights and irrigation availability in his evidence of comparable sales.[89] Mr. Garza testified that he did evaluate floodway limitations.[90] Mr. Garza further testified that he considered irrigation and water rights in his appraisals and assessments of comparable properties.[91] Plaintiff offers no reply to Defendant's argument.[92] The Court finds that Mr. Garza did consider water issues, including irrigation access and flood issues, in his analyses and his opinion and reports are not unreliable for their alleged failure to incorporate these aspects of the valuation.

Plaintiff next argues that Leonel Garza III violated the "unit rule" in his valuation of Tracts RGV-MER-3002-1 and RGV-MER-3002-2, which renders his "before" valuation of those properties unreliable.[93] Defendant argues that Mr. Garza did not violate the unit rule by appraising two different parts of the property separately and argues that "he treated the Progresso tract as a single unit."[94]

The "unit rule" is jurisprudentially established in the Fifth Circuit in that a landowner or the landowner's witness cannot "conglomerate" individual parts of a property, such as its land, buildings, and trees into one whole.[95] The unit rule "stands for the proposition that if the condemned land contains a mineral deposit, . . . it is proper to consider this fact in determining the market value of the land as a whole, but it is not permissible to determine separately the value of the mineral deposit and add this to the value of the land as a unit."[96] "The district court must also

---

[89] Dkt. No. 57 at 10–11, ¶¶ 22–23.

[90] Dkt. No. 54-6 at 67:22–68:18;  *id*. at 115:12–117:9.

[91] *Id*. at 47:5–50:20.

[92] *See* Dkt. No. 61.

[93] Dkt. No. 54 at 12, ¶ 21.

[94] Dkt. No. 57 at 11, ¶ 24.

[95] *See United States v. Certain Parcels of Land in Rapides Par.*, 149 F.2d 81, 82 (5th Cir. 1945).

[96] *United States v. 499.472 Acres of Land more or less in Brazoria Cnty.*, 701 F.2d 545, 549 (5th Cir. 1983) (quoting *United States v. 158.76 Acres of Land, more or less, situate in Town of Townshend*, 298 F.2d 559, 561 (2d Cir. 1962)).

value the property as a whole rather than the sum of the various uses to which it has been placed. The value of separate interests cannot exceed the worth of the whole."[97]

Plaintiff points to one aspect of Mr. Garza's report as violating the unit rule, recopied below:

**WHOLE PROPERTY RECONCILATION**

The subject property was determined to have an overall or combined market value of $1,216,475 based on the two (2) separate economic units selected for purposes of this report. The subject is divided by an existing Levee easement, however, the use and existing farming operation have been able to continue and develop an intensive growing operation. The northern economic unit was valued based on a unit rate of $7,500 per acre as the northern economic unit has direct access to CR 1598. The southern economic unit was valued at $5,500 per acre based on the location of the tract with no utility services available.

| WHOLE PROPERTY ANALYSIS | LAND AREA | UNIT RATE | MARKET VALUE |
|---|---|---|---|
| NORTHERN ECONOMIC UNIT | 137.630 Acres | $7,500 / Acre | $1,032,225 |
| SOUTHERN ECONOMIC UNIT | 33.500 Acres | $5,500 / Acre | $184,250 |
| IMPROVEMENT VALUE | | | $ - |
| | | | $1,216,475[98] |

Mr. Garza used the resulting $1,216,475 as the before value of the whole property in his analysis.[99]

The Court finds that Mr. Garza violated the unit rule and his before valuation is therefore unreliable. The Court can clarify this argument with an analogy. Suppose that Mr. Garza's "northern economic unit" contained a valuable gold mine whereas the "southern economic unit" was devalued because it was a former nuclear waste dumping ground. An appraiser could appraise this imaginary northern economic unit highly while appraising the southern economic unit, divided from the north naturally by a levee, as worth very little, then come to a conclusion of value that is

---

[97] *United States v. 8.41 Acres of Land, more or less, situated in Orange Cnty.*, 680 F.2d 388, 395 (5th Cir. 1982) (citations omitted).
[98] Dkt. No. 54-2 at 64.
[99] *Id.* at 11.

disproportionately inflated by the valuable northern unit while not weighed down by the low value or even negative value of the southern unit. But as Mr. Garza acknowledged in his testimony, that is not how the land would be sold.[100] This imaginary land would have to be sold as one unit, in which the value of the land would be promoted by the gold mine but simultaneously diminished by the nuclear waste dump. The purpose of the unit rule is to preclude valuation of the gold mine as an independent matter, disconnected from the gold mine's countervailing devaluation by the nuclear waste dump.

In this sense, Mr. Garza's expert report violates the unit rule. Mr. Garza treated the northern economic unit as more valuable because of its access to a county road, and treated the southern economic unit as less valuable, and then aggregated their values despite knowing that the property would sell as one unit.[101] Defendant attempts to defend Mr. Garza's appraisal by arguing that he "did not sever the tracts and value them separately. He merely provided information to show how he calculated the whole value."[102] But contrary to Defendant's assertion, Mr. Garza *did* treat the tracts as separate northern and southern units and *did* calculate separate per acre values which enlarged the value of the northern as compared to the southern "economic unit."[103] Mr. Garza does not calculate or show what the unit rate per acre of the entire, unitary property would be. It is worth noting that the United States is not taking Tracts RGV-MER-3002-1 and RGV-MER-3002-2 in the way that Mr. Garza has divided the land into separate economic units.[104] Mr. Garza failed to consider all elements that contribute to the value of the property and all elements that detract from it to arrive at a unitary market value for the single piece of property acquired.[105] Mr. Garza

---

[100] Dkt. No. 54-6 at 230:1–231:14.
[101] *See* Dkt. No. 54-2 at 64.
[102] Dkt. No. 57 at 12, ¶ 25.
[103] Dkt. No. 54-2 at 64.
[104] *United States v. 8.570 Acres of Land*, No. 7:20-cv-00170 (S.D. Tex. June 24, 2020), Dkt. No. 1-1 at 16–24.
[105] *See* INTERAGENCY LAND ACQUISITION CONF., UNIFORM APPRAISAL STANDARDS FOR FEDERAL LAND ACQUISITIONS at 98, § 4.2.2.2 (2016), https://www.justice.gov/file/408306/download (quoting *United States v. Wise*,

therefore fails to establish a before value for the before-and-after analysis. Accordingly, the Court agrees that his opinion and expert report with respect to Tracts RGV-MER-3002-1 and RGV-MER-3002-2 are unreliable and must be excluded.[106]

Plaintiff United States next argues that Leonel Garza III failed to substantiate his "diminution in value" calculation and his opinion is arbitrary.[107] Defendant counters that Mr. Garza sufficiently founded his opinion in land sales comparisons.[108] Plaintiff replies that the sales Mr. Garza relied upon are not comparable and do not "support his 40% diminution in value."[109]

In both of his appraisal reports, Mr. Garza calculated that the remainder property after the United States' taking will suffer a 40% diminution in value. Mr. Garza explained his diminution calculation in his report as follows:

> According to the Landowner Reference Guide [U.S. Border Patrol, Rio Grande Valley Sector, Gate Construction Project, Page 3, Important Information for Landowners], the US Government has full discretion of the use of the gates, "Border Patrol will have final say based on homeland security operational needs.", which will limit and/or restrict the future agricultural intensity of the southern remainder. Therefore, a diminution of -40% is indicated for the southern economic unit remainder. This is directly based on the restricted or controlled access which will limit the intensity of agricultural use in the remainder after. This analysis is based on direct sales comparison of properties which have similar remainder highest and best use. . . . Based on our research and analysis, we have concluded a diminution in market of the subject property resulting in a loss in marketability. The subject property will only be accessible through the border wall gates controlled by the Federal Government / CBP which indicated a damage -40% for a unit rate of $1,800 per acre. The same sales were utilized for the valuation of the remainder after the acquisition.[110]

---

131 F.2d 851, 853 (4th Cir. 1942) ("It is your duty to consider all of these elements that enter into the picture, all that contribute to make the property valuable, all, if there are any, that detract from it, and finally, weighing all those elements, determine what is just compensation for the single piece of property that has been taken by the Government.")).

[106] *See supra* note 39.

[107] Dkt. No. 54 at 15–16, ¶¶ 25–27.

[108] Dkt. No. 57 at 12–13, ¶¶ 26–27.

[109] Dkt. No. 61 at 7, ¶¶ 11–12.

[110] Dkt. No. 54-1 at 54 (alteration in original); *accord* Dkt. No. 54-2 at 68 (calculates a 40% diminution in value for the same reason for a final unit rate of $3,300 per acre).

Mr. Garza elaborated loquaciously at his deposition:

> [W]e do have market data that shows how properties that don't have direct access have a diminution of market value and have to go through either easements, levee easements, those types of factors that limit the access of the property. But, yes, that's discussed in my damage model . . . .

> [W]e did include a damage model [in the initial two reports] which included two tracts that had direct access to a public road and one that does not, that you have to go through an access easement controlled by another governmental entity. That is in our damage model.[111]

> [W]e looked at a damage model to determine other properties that had sold that have a similar type of restricted access. And, so, that's why Sale No. 1 and Sale No. 2 in this particular report were so vital, because Sale No. 1, the only access you had, it was through a levee wall -- well, sorry -- through the levee -- the levee system itself through a gate system that the levees have. And, so, in Sale No. 2, just down the street, same owner, same property but has full access to 23rd Street, sold for a much higher price but same flood zone, same highest and best use, same floodway. Everything is exactly the same other than access. Even the size of those two tracts were very similar if you look at Sale No. 1 and Sale No. 2. The ownership that was sold, same -- so, it was the same family that sold both tracts within a reasonable -- short period of time of each other. And, so, that was our basis for it because we were trying to define that -- that -- that hearing that we -- would give us a numerical or percentage of adjustment required for our overall analysis to be accurate. We were not going to go into this report, as indicated through the federal guidelines, just to come in there with a -- just a random percentage that I feel that deep down in my heart I believe that there should be a, you know, 75 percent diminution of market value. I needed to make sure that I was able to ascertain that from the data that's been provided.[112]

The "damage model" that Mr. Garza repeatedly refers to is the following table:

| DAMAGE MODEL | | | |
|---|---|---|---|
| SALE NO. 1 | | SALE NO. 2 | |
| Sales Price | $100,000 | Sales Price | $140,000 |
| Unit Value | $2,618 / Acre | Unit Value | $4,317 / Acre |
| Land Area | 38.19 Acres | Land Area | 32.43 Acres[113] |

---

[111] Dkt. No. 54-6 at 112:22–113:12.

[112] *Id.* at 151:22–153:1.

[113] Dkt. No. 54-1 at 55; Dkt. No. 54-2 at 69.

The United States attacks the two sales that Mr. Garza relied upon on two grounds: (1) Mr. Garza failed to adequately assess whether the sales were arms' length transactions and (2) the sales were insufficiently verified pursuant to Yellow Book procedures to confirm the sale details.[114] The Court again reminds the United States that a landowner's appraisal expert need not scrupulously comply with the Yellow Book.[115] Mr. Garza evidently relied on official information in deriving his data.[116]

The Court finds that this is a credibility dispute, not a reliability dispute. Plaintiff United States' argument boils down to the assertion that Mr. Garza "simply assumed that the paired sales were comparable without sufficient facts and data despite strong market evidence suggesting otherwise."[117] But Mr. Garza testified that his damage model was sufficiently grounded in comparable sales.[118] The United States just disagrees with his assertion. Nonetheless, Mr. Garza's assertions are founded upon actual data, not his mere assumptions or *ipse dixit*.[119] Therefore, whether Mr. Garza's damage model and 40% diminution calculation are credible based on the disputed sale evidence and damage modeling is an issue for the jury.[120] That Mr. Garza's damage model and 40% diminution calculation may be questionable is an insufficient ground to hold his opinion and report entirely inadmissible for the jury's consideration.[121]

---

[114] Dkt. No. 54 at 16–17, ¶¶ 28–29.

[115] *See supra* notes 69–70.

[116] *See* Dkt. No. 54 at 17, ¶ 29 (citing Dkt. No. 54-2 at 54 ("Recording Information Document No. 23011388 Verification MLS: A146047S.")).

[117] Dkt. No. 61 at 7, ¶ 11.

[118] *Cf. United States v. 14.38 Acres of Land, more or less situated in Leflore Cnty.*, 80 F.3d 1074, 1077–78 (5th Cir. 1996) (quotation omitted) ("[T]here are no infallible means for determining with absolute conviction what a willing buyer would have paid a willing seller for the condemnee's property at the time of taking . . . .").

[119] *See supra* note 42.

[120] *See supra* notes 31–37.

[121] *See supra* note 52.

Plaintiff United States last seeks to exclude Leonel Garza III's rebuttal reports as post-deadline supplements.[122] Defendant responds that Mr. Garza's rebuttal reports additionally incorporate only Plaintiff's expert's information in order to disagree with Plaintiff's expert.[123] Plaintiff replies that it will suffer unfair prejudice if Mr. Garza is permitted to expand on his original expert reports using additional evidence disclosed by Plaintiff's expert.[124]

Under Federal Rule of Civil Procedure 26(a)(2)(D), parties must make their expert disclosures "at the times and in the sequence that the court orders." In this case, the Court's scheduling order provided a June 2021 "[d]eadline for all parties to designate expert witnesses and provide expert reports in accordance with Federal Rule of Civil Procedure 26(a)(2)," and then a July 2021 deadline to designate "rebuttal expert witnesses" and provide those expert reports.[125] Plaintiff points out that district courts have rejected untimely supplemental expert testimony when the supposed supplemental information was already available to the expert prior to the deadline.[126] Plaintiff complains that allowing Mr. Garza to supplement his expert report with additional sale data that was already available to him online would give Mr. Garza an unfair "second bite at the apple" just because he was not diligent enough to locate the sale information independently.[127]

The specific additional evidence at issue is one sale data point. In Mr. Garza's original expert report, he incorporated two comparable sales to conclude that a portion of the properties post-taking will suffer a 40% diminution of value because those portions will be cut off from roads and located behind border gates and fences. In Mr. Garza's rebuttal expert report, he incorporates one additional comparable sale, disclosed in Plaintiff's original expert report, to further

---

[122] Dkt. No. 54 at 18, ¶ 32.
[123] Dkt. No. 57 at 16, ¶ 31.
[124] Dkt. No. 61 at 5–6, ¶¶ 8–10.
[125] Dkt. No. 45 at 3.
[126] Dkt. No. 54 at 18–19, ¶ 32 (quoting *United States v. 9.345 Acres of Land, more or less, situated in Iberville Par.*, No. 11-803-JJB-EWD, 2016 U.S. Dist. LEXIS 135199, at *37 (M.D. La. Sept. 30, 2016)).
[127] Dkt. No. 61 at 6, ¶¶ 8–9.

substantiate his 40% diminution calculation and to rebut Plaintiff's expert's opinion that the border fence and gate have no impact on the value of the property behind the fence and gate.[128] Mr. Garza testified consistently with the foregoing and elaborated that he incorporated the third sale point in his rebuttal report but did not modify his conclusion that the 40% diminution in value of the extra-border remainder was appropriate.[129]

The Court finds Plaintiff United States' argument indecipherable. Plaintiff confusingly asserts that it is prejudiced by one additional piece of data, that Plaintiff itself introduced, that was evidently inadvertently omitted from Mr. Garza's original expert report, that Mr. Garza incorporates to rebut Plaintiff's expert, at the time of the Court's rebuttal report disclosure deadline, even though the additional data does not change Mr. Garza's conclusions. The Court can only imagine how the United States is prejudiced by a rebuttal report submitted by the rebuttal deadline. In any case, in the case Plaintiff cited to bolster its argument, the Middle District of Louisiana held that a rebuttal expert disclosure is "proper when an expert uses it to identify information that he *inadvertently*, rather than strategically, omitted from his first report."[130] The Court finds that Mr. Garza did not strategically omit the third sale, even if it was available to him at the time of his first report, because his conclusions are unchanged. The Court rejects Plaintiff's argument that Mr. Garza's rebuttal reports should be stricken on these grounds.

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff United States' motion to exclude.[131] Plaintiff's motion is **GRANTED** to the extent that Leonel Garza III's opinions, reports, and testimony with respect to Tracts RGV-MER-3002-1 and RGV-

---

[128] Dkt. No. 61 at 5–6, ¶ 8.

[129] Dkt. No. 54-1 at 153:2–154:3.

[130] *United States v. 9.345 Acres of Land, more or less, situated in Iberville Par.*, No. 11-803-JJB-EWD, 2016 U.S. Dist. LEXIS 135199, at *37 (M.D. La. Sept. 30, 2016) (citing *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 630 (E.D.N.C. 2008)).

[131] Dkt. No. 54.

MER-3002-2 are **EXCLUDED** from this case. The Court **DENIES** the remainder of Plaintiff's motion to exclude.

Having ascertained the evidence before the Court, the Court turns to the issue of summary judgment.

### III. DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant seeks a summary judgment "finding that the bollard fence existing on Defendant's property at the time of the taking did not belong to the United States of America and instead belonged to Defendant Fuller Farms prior to the taking."[132]

#### a. Legal Standard

Federal Rule of Civil Procedure 56 provides that a court shall award summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[133] To earn summary judgment, the movant must demonstrate that there are no disputes over genuine and material facts and that the movant is entitled to summary judgment as a matter of law.[134] To demonstrate the absence of a genuine dispute of material fact, the movant must point to competent evidence in the record, such as documents, affidavits, and deposition testimony[135] and must "articulate precisely how this evidence supports his claim,"[136] to "show that

---

[132] Dkt. No. 53 at 1.
[133] FED. R. CIV. P. 56(a);  *see Bulko v. Morgan Stanley DW Inc.*, 450 F.3d 622, 624 (5th Cir. 2006).
[134] *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993).
[135] FED. R. CIV. P. 56(c)(1);  *see Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quotation omitted) ("The movant . . . must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.").
[136] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[137]

"A fact is 'material' if its resolution could affect the outcome of the action,"[138] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[139] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[140] "Although this is an exacting standard, summary judgment is appropriate where the only issue before the court is a pure question of law."[141] The Court does not weigh the evidence or evaluate the credibility of witnesses and views all facts and inferences in the light most favorable to the nonmovant,[142] including "resolv[ing] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[143]

**b.   Analysis**

Defendant seeks summary judgment that "Plaintiff did not have the property right to install the bollard fence; and that the bollard fence was owned by Defendant prior to the takings in this case," so Defendant is entitled to some measure of just compensation (to be established by the jury) for the bollard fence improvement that Plaintiff wrongfully placed upon Defendant's land.[144] Plaintiff objects that Defendant is really bringing a stale inverse condemnation claim that this

---

[137] *Celotex Corp.*, 477 U.S. at 322 (quoting FED. R. CIV. P. 56(c)).

[138] *Burrell v. Dr. Pepper/Seven UP Bottling Grp.*, 482 F.3d 408, 411 (5th Cir. 2007).

[139] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006); *see Bache v. Am. Tel. & Tel. Co.*, 840 F.2d 283, 287 (5th Cir. 1988) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) ("[T]o determine if an issue of material fact is genuine, we must then decide whether 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'").

[140] *Anderson*, 477 U.S. at 248.

[141] *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991).

[142] *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996).

[143] *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

[144] Dkt. No. 53 at 10–11, ¶ 24.

Court lacks the jurisdiction to adjudicate,[145] equitable principles preclude Defendant from recovering for government-placed improvements,[146] and that the United States owns the bollard fence anyway.[147] Defendant replies that it seeks just compensation for the bollard fence taken in this proceeding and is not thereby asserting an inverse condemnation claim,[148] and that Plaintiff United States does not own the bollard fence.[149]

At issue is the doctrine of accession: "A property owner's right to all that is added to the property (esp. land) naturally or by labor, including land left by floods and improvements made by others <the newly poured concrete driveway became the homeowner's property by accession>."[150] In federal eminent domain cases, the Court "tries all issues,"[151] so the issue of whether Defendant should be compensated for the bollard fence is an issue of law ripe for summary judgment. The Court must first assess its jurisdiction to decide this issue. Without jurisdiction, all other arguments are mooted.

### 1. Inverse Condemnation

Plaintiff argues that Defendant is jurisdictionally barred from asserting a counterclaim for compensation via an untimely inverse condemnation against the United States.[152] The Court first notes that the United States relies upon a misattributed quote.[153] The Court reminds Plaintiff's counsel Baltazar Salazar of his ethical obligation for candor toward the Court.[154]

---

[145] Dkt. No. 56 at 2, ¶¶ 2–4.

[146] *Id.* at 16, ¶¶ 28–30 (quoting *Searl v. Sch. Dist. No. 2, of Lake Cnty.*, 133 U.S. 553, 565 (1890)).

[147] *Id.* at 20, ¶ 37.

[148] Dkt. No. 60 at 2, ¶ 3.

[149] *Id.* at 2–3, ¶¶ 4–5.

[150] *Accession*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[151] FED. R. CIV. P. 71.1(h)(1).

[152] Dkt. No. 56 at 12–13, ¶¶ 20–21.

[153] *Id.* at 12, ¶ 20 n.50. Plaintiff was quoting *United States v. An Easement & Right-of-Way Over 6.09 Acres of Land*, No. 5:14-CV-0032-JEO, 2015 WL 12765994, at *3 (N.D. Ala. Apr. 29, 2015).

[154] *See* Tex. Disciplinary Rules Prof'l Conduct R. 3.03(a)(1), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West 2021) (Tex. State Bar R. art. X, § 9).

"Inverse condemnation is a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency."[155] The Tucker Act precludes this Court's jurisdiction over an inverse condemnation claim involving more than $10,000,[156] and over civil claims against the United States older than "six years after the right of action first accrues."[157] Plaintiff asserts that the value of the bollard fence is greater than $10,000,[158] and agrees that the bollard fence was constructed in 2008 or 2009.[159] Even assuming the amount in controversy with respect to the bollard wall is greater than $10,000 and that Defendant's inverse condemnation claim would be barred by the statute of limitations, this Court does not lack jurisdiction for two reasons: (1) Defendant does not presently seek to recover "the value of property which ha[d] been taken" by the United States' construction of the bollard wall in alleged violation of Defendant's property rights, and (2) "the formal exercise of the power of eminent domain has been attempted by the taking agency."[160]

First, Defendant's private property rights, at the time of the bollard wall's construction in 2008 or 2009,[161] included "the right to possess and use, the right to exclude, and the right to transfer"[162] its land consistent with the levee easements established over its property in 1935 and 1936.[163] If the United States violated Defendant's property rights by constructing the bollard wall, then Defendant could recover in an inverse condemnation claim for the *value of its property* that

---

[155] *United States v. Clarke*, 445 U.S. 253, 257 (1980) (cleaned up).
[156] *See United States v. 101.88 Acres of Land, more or less, situated in St. Mary Par.*, 616 F.2d 762, 770 (5th Cir. 1980)
[157] 28 U.S.C. § 2401(a).
[158] Dkt. No. 56 at 13, ¶ 21 (citing Dkt. No. 53 at 7, ¶ 18) ("Defendant seeks compensation in excess of $10,000 for the taking of the preexisting bollard wall . . . .").
[159] *Id.* at 13, ¶ 20.
[160] *See supra* note 155.
[161] *See* Dkt. No. 56 at 13, ¶ 21.
[162] *Property*, BLACK'S LAW DICTIONARY (11th ed. 2019).
[163] *See* Dkt. No. 53 at 5, ¶¶ 12–13.

the United States took or violated, for example, Defendant's right to exclude unwanted construction. However, as Plaintiff United States admits, the issue in the present action "is the determination of just compensation for the property taken, measured by the market value of the property *as it existed* on the dates of taking" in 2020.[164] The United States seeks to take a fee simple interest over Defendant's land, including all of the land's improvements that existed at the time of the takings in 2020.[165] Therefore, Defendant's unasserted inverse condemnation claim and Plaintiff's present taking claim differ in nature. Defendant is not asserting an inverse condemnation claim and does not seek to recover for the *past violation* of its property rights, but rather seeks just compensation for the *taking of an improvement upon* Defendant's property.[166] In other words, Defendant does not seek recompense for the late-2000s violation of its right to exclude, but rather seeks recompense for the 2020 fee simple taking of its land including the bollard fence improvement.

Plaintiff counters that the Fifth Circuit has previously rejected a landowner's claim to revivify a time-barred inverse condemnation claim during a formal condemnation proceeding.[167] In the case cited, the United States instituted formal condemnation proceedings to acquire land in 1994, and the district court held that the United States must pay the higher per-acre valuation of the land as though the land was suitable for residential development (rather than the lesser per-acre valuation for undevelopable wetlands) because it was the United States' actions in refusing permits that resulted in a levee not being built that would have rendered the land suitable for residential development.[168] The Fifth Circuit reversed, holding the landowner's higher valuation

---

[164] Dkt. No. 56 at 7, ¶ 9 (emphasis in original).
[165] Dkt. No. 1-1 at 14.
[166] Dkt. No. 60 at 1–2, ¶ 2.
[167] Dkt. No. 56 at 15, ¶ 26 (citing *United States v. Land*, 213 F.3d 830, 836 (5th Cir. 2000)).
[168] *Land*, 213 F.3d at 831, 833.

claim barred by the Tucker Act. The United States Court of Federal Claims had already denied the landowners' Tucker Act claims regarding the permit denial as time-barred,[169] but the landowners asserted that the new formal condemnation proceeding in 1994 did not preclude their attempt to seek greater damages. The Fifth Circuit rejected the landowners' "effort to re-litigate an expired inverse condemnation suit 'via the back door.'"[170] The Fifth Circuit held, in the passage Plaintiff quotes:

> A fundamental reason for rejecting Landowners' novel theory is our inability to square it with any temporal limiting principle. If the federal government were to have built a dam in 1900, and this dam lowered property values for nearby landowners, the landowners would be able to recover damages for this alleged taking if the federal government decided in the year 2000 that it ought to condemn their land. Property law will not bear continuing governmental liability of that nature. The federal government and federal courts need not revisit every possible ancient inverse condemnation claim when they decide to condemn a piece of property. The animating principles behind the Tucker Act's six-year statute of limitations are consistent with venerable property rules that stress the importance of finality, clarity of title, and the extinguishment of claims by owners who sleep on their rights.[171]

The Court does not find this precedent to govern the issues in this case. The Fifth Circuit repeatedly emphasized the temporality of the landowners' claims to deny their claims as res judicata (claim precluded) by the earlier ruling by the United States Court of Federal Claims. Specifically, the Fifth Circuit was unwilling "[t]o grant property owners an unlimited right to litigate (or re-litigate) any claims that the government previously interfered with their property rights."[172] The Fifth Circuit also held that "[t]he Government's sovereign immunity . . . defeats a claim alleging that Landowners' compensation in condemnation should be adjusted upward to reflect what the land would have been worth in the absence of a prior regulatory taking."[173] But the Fifth Circuit's

---

[169] *Id.* at 832–33.
[170] *Id.* at 836.
[171] *Id.*
[172] *Id.* at 837.
[173] *Id.*

holdings were directed to *previous* interferences and a *prior* regulatory taking for which the landowners sought compensation, specifically compensation for the devaluation of their land as a consequence of the levee permit denial. In the case at bar, again, Defendant does not seek compensation for the *prior* interference with its property rights or any compensation for what the land may have been worth without the bollard fence, but rather seeks compensation for the *presently existing* bollard fence improvement.[174] There is no need to assess the impact to Defendant's land or property rights in 2008 or 2009; the question at hand is, as Plaintiff emphasizes, the "market value of the property [including the bollard wall] *as it existed* on the dates of taking" in 2020.[175]

There is a further reason to reject Plaintiff's argument. Plaintiff is attempting to engraft a counterclaim upon Defendant that Defendant is simply not asserting. An inverse condemnation claim only lies when the "formal exercise of the power of eminent domain has [not] been attempted" by a governmental authority.[176] Cases in the Fifth Circuit draw a "distinction between damages allowable in the condemnation proceeding, and claims for damages that are not allowable because they seek to make the United States pay compensation, in a condemnation proceeding, for an alleged taking of land not formally condemned by the United States."[177] Here, Plaintiff United States seeks to take the subject property in "fee simple,"[178] which is a formal proceeding against the land including the bollard wall. Although the Court agrees that "[t]he condemnation statutes do not waive sovereign immunity for property owners to institute counterclaims or suits seeking damages for takings beyond the scope of the Government's filing," the Court's proper inquiry

---

[174] *See supra* note 166 and accompanying text.
[175] Dkt. No. 56 at 7, ¶ 9 (emphasis in original).
[176] *United States v. Clarke*, 445 U.S. 253, 257 (1980).
[177] *United States v. 101.88 Acres of Land, more or less, situated in St. Mary Par.*, 616 F.2d 762, 770 (5th Cir. 1980).
[178] Dkt. No. 1-1 at 14.

includes "the property described in the Government's filing."[179] Plaintiff's assertion that the Tucker Act and laws of inverse condemnation constrain the Court is a red herring; inverse condemnation is not the issue here. The Court holds that Defendant Fuller Farms is not asserting a claim that is jurisdictionally barred by the Tucker Act.

### 2. Equitable Principles

Plaintiff next asserts that the Court should not compensate Defendant for an improvement built by the government because doing so would result in "an unfair windfall in Defendant's favor, and an unfair burden to the public."[180] Defendant offers no reply.[181] Plaintiff again relies on a misattributed quote.[182]

To substantiate its argument, Plaintiff United States relies on complicated cases dealing with government leases on freehold estates, during which time the government makes improvements on the land, then moves to take the land via eminent domain after the improvements are completed.[183] The cases cited reach complex and potentially conflicting outcomes that depend heavily on the terms of the lease involved.[184] In this case, there is no lease. Nevertheless, in the Court's review of the authorities, the Court identified an unambiguous pronouncement of the Fifth Circuit, cited by no party, that governs the outcome in this case:

> "[T]he general rule as to things affixed to the freehold by a trespasser or a person entering tortiously is not applicable as against a body having the power of eminent domain, and entering without leave, and making improvements for the public

---

[179] *Narramore v. United States*, 960 F.2d 1048, 1051 (Fed. Cir. 1992) (citing *United States v. 3,317.39 Acres of Land, more or less, in Jefferson Cnty.*, 443 F.2d 104, 106 (8th Cir. 1971), *quoted in 101.88 Acres*, 616 F.2d 762 *passim*).

[180] Dkt. No. 56 at 16, ¶ 28.

[181] *See* Dkt. No. 60.

[182] Dkt. No. 56 at 17, ¶ 29 & n.66. Plaintiff was quoting *United States v. Lot 3 of Cedar Hill Office Park*, 894 F. Supp. 268, 269–70 (E.D. Va. 1995).

[183] Dkt. No. 56 at 17, ¶ 29 n.66 (citing, *inter alia, Bibb Cnty. v. United States*, 249 F.2d 228, 230 (5th Cir. 1957) & *United States v. Del., Lackawanna & W. R.R.*, 264 F.2d 112, 116–17 (3d Cir. 1959)).; *cf. United States v. Five Parcels of Land in Harris Cnty.*, 180 F.2d 75, 77 (5th Cir. 1950).

[184] *See United States v. Certain Space in Rand McNally Bldg. in Chi.*, 295 F.2d 381, 383 (7th Cir. 1961) (discussing the cases).

purpose for which it was created and given such power." And the condemnor may later condemn the property without being required to pay more than the value of the land without the improvements.[185]

The Court therefore agrees with Plaintiff United States that the issue of just compensation in this case is not affected by the United States-placed bollard fence improvement on Defendant's property. Defendant is entitled to compensation for its land's value excepting the bollard wall. Accordingly, the Court **DENIES** Defendant's motion for partial summary judgment.[186]

## IV. CONCLUSION AND HOLDING

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff United States' motion to exclude the opinions, testimony, and reports of Leonel Garza III. The Court **GRANTS** Plaintiff's motion[187] to the extent that Mr. Garza's opinions, testimony, and reports with respect to Tracts RGV-MER-3002-1 and RGV-MER-3002-2 are **EXCLUDED**. The Court **DENIES** the remainder of Plaintiff's motion to exclude.

The Court **DENIES** Defendant's motion for partial summary judgment in its entirety.[188]

A jury will determine just compensation in this case consistent with the Court's orders.[189] The Court's December 10, 2021 Fourth Amended Scheduling Order remains in effect.[190]

IT IS SO ORDERED.

DONE at McAllen, Texas, this 20th day of December 2021.

_____
Micaela Alvarez
United States District Judge

---

[185] *Anderson-Tully Co. v. United States*, 189 F.2d 192, 197 (5th Cir. 1951) (quoting *Ill. Cent. R.R. v. Le Blanc*, 21 So. 760, 762 (1897)).
[186] Dkt. No. 53.
[187] Dkt. No. 54.
[188] Dkt. No. 53.
[189] *See* Dkt. No. 50 at 2.
[190] Dkt. No. 67.