United States District Court
Southern District of Texas
**ENTERED**
January 25, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:20-cv-00154 |
| | § | |
| 4.620 ACRES OF LAND, more or less, in | § | Lead Case |
| HIDALGO COUNTY, TEXAS; and | § | |
| FULLER FARMS, | § | |
| | § | |
| Defendants. | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:20-cv-00170 |
| | § | |
| 8.570 ACRES OF LAND, more or less, in | § | Member Case |
| HIDALGO COUNTY, TEXAS; and | § | |
| FULLER FARMS, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

The Court now considers "Defendant's Opposed Motion for Leave to File Motion for Reconsideration and Motion for Reconsideration"[1] and Plaintiff "United States of America's Opposition to Defendant's Motion for Leave to File Motion for Reconsideration and Motion for Reconsideration."[2] After considering the motion, record, and relevant authorities, the Court **GRANTS** Defendant leave to file its motion but **DENIES** Defendant's motion for reconsideration on its merits.

---

[1] Dkt. No. 73.
[2] Dkt. No. 76.

## I. BACKGROUND

The full background of this eminent domain case is recounted in the Court's December 20, 2021 opinion and order.[3] The Court will describe only the background relevant to the instant motions.

This Court's March 22, 2021 scheduling order provided for a November 3, 2021 deadline to file all pretrial motions.[4] On November 3rd, Plaintiff United States filed its motion to exclude the expert evidence of Leonel Garza III, Defendant Fuller Farms' expert.[5] That same day, Defendant filed its motion for partial summary judgment.[6] On December 20th, the Court adjudicated both motions, granted the exclusion in part, and denied Defendant's motion for partial summary judgment in full.[7] Ten days after the Court issued its opinion, Defendant filed the instant motion, requesting that the Court (1) permit Defendant's post-deadline motion filing, (2) reconsider the Court's partial exclusion of Defendant's expert's opinions and evidence, and (3) revisit and adjudicate certain prayers of Defendant's motion for partial summary judgment.[8]

To begin with, the Court acknowledges that Defendant's motion for reconsideration could not have been prepared until after the Court's December 20th order, after the November 3rd deadline for pretrial motions. Defendant quickly prepared and filed the motion after issuance of the Court's order, especially in light of the end-of-year holiday season, and appears to be acting in good faith in promptly urging reconsideration. Accordingly, the Court **GRANTS** Defendant's motion to the extent it requests leave to file a motion for reconsideration of the Court's December

---

[3] Dkt. No. 72 at 2. Docket entry 72 is also available at *United States v. 4.620 Acres of Land, more or less, in Hidalgo County*, No. 7:20-cv-00154, 2021 WL 5999388 (S.D. Tex. Dec. 20, 2021) (Alvarez, J.).
[4] Dkt. No. 45 at 4.
[5] Dkt. No. 54.
[6] Dkt. No. 53.
[7] Dkt. No. 72.
[8] Dkt. No. 73 at 1–2, ¶¶ 1–2.

20th opinion.[9]  The motion for reconsideration will be considered timely filed. Plaintiff timely responded,[10] and the motion is ripe for consideration. The Court turns to its analysis.

## II. DISCUSSION

### a. Legal Standard

"The Federal Rules do not recognize a 'motion for reconsideration' *in haec verba*."[11] Instead, this Court addresses such motions "under [Federal Rule of Civil Procedure] 54(b) for interlocutory orders, and under Rules 59 and 60 for final judgments."[12]  Because the Court has not issued a final judgment, Rule 54(b) governs.[13]  "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'"[14]  Courts will generally defer to earlier orders and rulings, but district courts do have discretion to reconsider and reverse any earlier interlocutory order.[15]  "Reconsideration of an interlocutory decision is available under the standard as justice requires. . . . Underlying a motion for reconsideration is the caveat that, where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."[16]

---

[9] Dkt. No. 73.

[10] Dkt. No. 76.

[11] *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990), *overruled on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (per curiam), *as recognized in U.S. Bank NA v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 429 (5th Cir. 2014).

[12] *Pro Valley Foods, L.L.C. v. Bassett & Walker Int'l, Inc.*, No. 7:19-cv-00106, 2020 WL 1150128, at *4, 2020 U.S. Dist. LEXIS 41727, at *10–11 (S.D. Tex. Mar. 9, 2020) (Alvarez, J.) (collecting cases).

[13] *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858, 862 (5th Cir. 1970) (quoting *John Simmons Co. v. Grier Bros.*, 258 U.S. 82, 88 (1922)) (holding that the district court's denial of a motion for summary judgment was interlocutory because "'the court at any time before final decree (could) modify or rescind it.'"), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (per curiam), *as recognized in Iturralde v. Shaw Grp.*, 512 F. App'x 430, 432 (5th Cir. 2013) (per curiam).

[14] *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (per curiam) (quoting *Lavespere*, 910 F.2d at 185).

[15] *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 727–28 (5th Cir. 2012)

[16] *Contango Operators, Inc. v. United States*, 965 F. Supp. 2d 791, 800 (S.D. Tex. 2013) (Lake, J.) (cleaned up) (collecting cases); *see Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993) ("The court must strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts.").

### b. Analysis

#### 1. Exclusion of Defendant's Expert Leonel Garza III

Defendant first argues that the Court, in its December 20, 2021 opinion and order, misapplied the "unit rule" as established in the Fifth Circuit.[17] To recount, Defendant's expert Leonel Garza III conducted a "WHOLE PROPERTY RECONCILATION" in which he divided the Defendant's single property subject to Plaintiff's taking into two independent "economic unit[s]" and ascertained that the "northern economic unit was valued based on a unit rate of $7,500 per acre as the northern economic unit has direct access to CR 1598. The southern economic unit was valued at $5,500 per acre based on the location of the tract with no utility services available."[18] After establishing the definitions and nuances of the unit rule, which generally requires treating property as a single cohesive unit for valuation purposes, and analyzing Mr. Garza's expert report, this Court concluded that "Mr. Garza's expert report violates the unit rule. Mr. Garza treated the northern economic unit as more valuable because of its access to a county road, and treated the southern economic unit as less valuable, and then aggregated their values despite knowing that the property would sell as one unit."[19] The Court excluded Mr. Garza's "opinions, testimony, and reports with respect to Tracts RGV-MER-3002-1 and RGV-MER-3002-2."[20]

Defendant argues that the Court misunderstood the unit rule. Specifically, Defendant argues that the unit rule actually precludes aggregating things upon the land, such as trees and buildings, and precludes aggregating various legal interests, such as a fee simple determinable or life estate,[21] but no court has applied the unit rule "to bar evidence showing different values of

---

[17] Dkt. No. 73 at 5–6, ¶¶ 7–9.
[18] Dkt. No. 54-2 at 64.
[19] Dkt. No. 72 at 15.
[20] *Id*. at 29.
[21] Dkt. No. 73 at 5–7, ¶¶ 8, 10.

land per acre with a combined overall value" and this Court should not be the first.[22] Contrary to Defendant's assertions, the Fifth Circuit faulted the district court for adjudicating an eminent domain proceeding upon an:

> ill assorted and misfit collection of evidence **valuing separately land**, buildings, trees and plants . . . . Instead of producing evidence as to the value of the land, to be condemned, **as a whole** and in its then condition, on which a jury might rest its verdict, appellee produced witnesses who estimated: the value of the house in vacuo; **the value not of the land as a whole and as it then was but as separate lots into which it was supposititiously divided**; the value of the bulbs not as their presence added to the value of the land as land but as though they were being separately condemned; and then sought by the verdict to conglomerate this mass of unrelated and inharmonious testimony into a consistent whole.[23]

The Supreme Court holds that "the appraised value of the property represents the whole fee."[24] The Court did not misunderstand or misapply the unit rule.

The Court will offer a clarifying analogy to address Defendant's arguments for reconsideration and illuminate the following discussion. Suppose a retail seller offered for sale individual sheets of printer paper for 1¢ per page. The naïve economist would therefore expect 500 sheets of printer paper, a ream, to sell for $5. This is a *cumulative* calculation; the conclusion of value is based entirely on the cumulation of the ream's constituent parts. However, the sophisticated economist understands bulk discounts. Without any other data, the sophisticated economist might conclude that an undiscounted ream would sell for $5 based on the value of its constituent sheets of paper, but that a bulk discount of 50¢ will apply and that a ream will actually sell for $4.50. This is a *contributory* calculation; the conclusion of value is based on both (1) the contributory value of each individual sheet of paper to the ream, and (2) the informed market perspective that many single units sold in one bulk transaction at retail are discounted below the

---

[22] *Id.* at 13, ¶ 18.

[23] *United States v. Certain Parcels of Land in Rapides Par.*, 149 F.2d 81, 82 (5th Cir. 1945) (emphases added).

[24] *United States v. Dunnington*, 146 U.S. 338, 351 (1892).

sum of what sales for each of those individual units would be. Applying this analogy to land sales, suppose a golf course developer intent on establishing a sprawling golf course sought to purchase five parcels of land surrounding a lake from a single owner. Whereas the naïve economist would anticipate the seller to gain $50,000 by the sale because of the expected $10,000 selling price of each individual parcel cumulated, the sophisticated economist would expect either a negotiated discount below $50,000 because of the bulk purchase or a sale price inflated above $50,000 because of the market scarcity and desirability to the golf course developer of the lakeside parcels. Again, the sophisticated economist in this latter analogy goes beyond a mere *cumulative* calculation of the five parcels considered separately and instead considers the *contributory* value of the five parcels to the overall sale together with other factors. This is the core of the unit rule.[25] The unit rule commands *contributory* appraisals and disallows *cumulative* appraisals.[26] The unit rule precludes siloed consideration of multifarious properties or constituent property values cumulated into a single conclusion, rather than a market-informed perspective of how the entire property with all of its upsides and downsides would be valued.

Defendant nevertheless argues that the Court, in its December 20th opinion, misunderstood the unit rule because the Fifth Circuit "did not hold that the division of the land into lots *by itself* would be a sufficient basis for reversal."[27] Defendant's assertion about the Fifth Circuit's holding is correct as far as it goes, but the law of the unit rule is not an ossified thing. When considering a Fifth Circuit opinion, the district court should account for its letter *and* spirit.[28] Again, the import

---

[25] *Cf. United States v. City of New York*, 165 F.2d 526, 528–29 (2d Cir. 1948) (Learned Hand, J.).

[26] *United States v. 499.472 Acres of Land more or less in Brazoria Cnty.*, 701 F.2d 545, 549 (5th Cir. 1983) (quoting *United States v. 158.76 Acres of Land, more or less, situate in Town of Townshend*, 298 F.2d 559, 561 (2d Cir. 1962)) (holding that the unit "rule stands for the proposition that if the condemned land contains a mineral deposit, . . . it is proper to consider this fact in determining the market value of the land as a whole, but it is not permissible to determine separately the value of the mineral deposit and add this to the value of the land as a unit").

[27] Dkt. No. 73 at 6, ¶ 9 (citing *United States v. Certain Parcels of Land in Rapides Par.*, 149 F.2d 81, 82 (5th Cir. 1945)).

[28] *See United States v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004).

of the unit rule and the Fifth Circuit's jurisprudence is that appraisal evidence valuing land as anything other than a unitary whole is unreliable. That there is no Fifth Circuit or Supreme Court precedent on all fours with this case does not persuade the Court that it misinterpreted the existing precedent.

Defendant next argues that its expert Leonel Garza III did not supposititiously divide the land in his report into two separate economic units because "[t]he levee barrier is a genuine barrier that is not imaginary, and the floodway is not imaginary or created for the purposes of valuation."[29] But the Fifth Circuit condemned the use of evidence that considered "the value not of the land as a whole and as it then was but as separate lots into which it was supposititiously divided."[30] "'Testimony showing how many building lots a tract can be divided into and what such lots could be sold for separately has frequently been held inadmissible in condemnation proceedings. Such testimony is too uncertain and speculative.'"[31]  The unit rule commands that property, whether or not it can be divided among real or imaginary lines, *not* be so divided and rather that the property at issue must be considered as a whole. To advocate its narrower view of the unit rule, Defendant cites the Uniform Appraisal Standards for Federal Land Acquisitions (Yellow Book)—a sea change from Defendant's earlier position that the "very technical Yellow Book . . . does not even apply to Mr. Garza"[32]—and out-of-circuit authorities that do not govern this Court.[33] Defendant does not cite any controlling authority indicating that this Court mistakenly applied the unit rule.[34] Defendant's argument for reconsideration because of a misinterpretation of law is unpersuasive.

---

[29] Dkt. No. 73 at 6, ¶ 9.
[30] *Certain Parcels of Land in Rapides Par.*, 149 F.2d at 82.
[31] *United States ex rel. Tenn. Valley Auth. v. Easement & Right of Way Over Certain Land in Catoosa Cnty.*, 123 F. Supp. 886, 888 (N.D. Ga. 1954) (quoting *Spring Valley Waterworks v. City & Cnty. of S.F.*, 192 F. 137, 163 (C.C.N.D. Cal. 1911).
[32] Dkt. No. 57 at 10, ¶ 21.
[33] Dkt. No. 73 at 7, ¶ 10 (citing *United States v. 6.45 Acres of Land*, 409 F.3d 139, 146 (3d Cir. 2005)).
[34] *See id.*

Defendant also argues, quite similarly to Defendant's earlier response brief,[35] that his expert "Mr. Garza simply recognized (as does the market) that property north of the levee that is not in the floodway has a higher value per acre than property south of the levee and within the floodway."[36] Defendant argues that Mr. Garza earnestly combined the differently valued acreage of the tract into one unitary whole because "[i]t would have been wrong of Mr. Garza to treat all of the acreage as having the same value when there is a flood control levee separating the property and a separate market for floodway property."[37] Defendant belabors this point, repeatedly reiterating that Mr. Garza properly accounted for the levee barrier,[38] that the property "north of the fence that is not in the floodway has a higher value than the property south of the fence,"[39] and that Mr. Garza must have ascertained that the northern and southern economic units would be valued differently.[40] To support its position, Defendant offers the hypothetical that if a slender parcel of land had "two acres of valuable highway frontage" with a remaining ninety-eight acres of "undevelopable" land behind the highway frontage, then in the absence of comparable sales data of similar properties with valuable frontages *and* significant undevelopable land attached, an appraisal expert has no choice but to assess the relevant market data for valuable frontages and the relevant market data for undevelopable acreage independently, then reach a conclusion of value for the slender subject property that admixes these two data points.[41]

---

[35] *Compare* Dkt. No. 73 at 5, ¶ 7, *with* Dkt. No. 57 at 11, ¶ 24.

[36] Dkt. No. 73 at 5, ¶ 7.

[37] *Id.*

[38] *Id.* at 6, ¶ 9.

[39] *Id.* at 8, ¶ 11.

[40] *Id.* at 9, ¶ 13.

[41] *Id.* at 5 n.1; *accord id.* at 12–13, ¶ 17.

While the Court is sympathetic to the gravity of holding Defendant's expert's appraisal opinions partially inadmissible,[42] Mr. Garza plainly violated the unit rule by conducting a cumulative rather than contributory calculation:

| WHOLE PROPERTY ANALYSIS | LAND AREA | UNIT RATE | MARKET VALUE |
|---|---|---|---|
| NORTHERN ECONOMIC UNIT | 137.630 Acres | $7,500 / Acre | $1,032,225 |
| SOUTHERN ECONOMIC UNIT | 33.500 Acres | $5,500 / Acre | $184,250 |
| IMPROVEMENT VALUE | | | $ - |
| | | | $1,216,475[43] |

In short, Mr. Garza merely added the value of the "northern economic unit" to its southern counterpart without further analysis. This is what the unit rule forbids: cumulating the value of different slices of the same property without analyzing how the whole unitary property would be considered in the market.[44] Tellingly, Defendant cites no evidence to substantiate its argument that Mr. Garza must have considered data for the northern and southern economic units independently despite the unit rule. In fact, as Plaintiff points out, Mr. Garza conducted his appraisal in express disregard of the unit rule.[45] Mr. Garza testified that, in this case, he did "not believe that it is incorrect to – to have that separation in value" and division of the property and further did not "believe that the unit rule applies in [this] -- in [this] particular case."[46]

Even if Defendant's argument that an appraisal expert, in the absence of sales data for a comparable unitary parcel, would have to independently analyze market data for constituent parts of the subject property to arrive at any admissible opinion of value respecting the whole is correct,

---

[42] *See* Dkt. No. 72 at 8 (quoting *United States v. 14.38 Acres of Land, more or less situated in Leflore Cnty.*, 80 F.3d 1074, 1077–78 (5th Cir. 1996)).

[43] Dkt. No. 54-2 at 64.

[44] *See supra* text accompanying note 25.

[45] Dkt. No. 73 at 8, ¶ 15.

[46] Dkt. No. 54-6 at 221:6–222:3.

that is not what happened in this case. In his expert report, Mr. Garza simply declared, without any substantiation, that the northern economic unit should be valued separately (as more valuable) because it has access to a county road.[47] In Mr. Garza's deposition, when he was being quizzed by Plaintiff's counsel about whether the property at issue here should be treated as two independent economic units, he elaborated at length:

> So, there's not enough in the market itself for me to determine that -- that it would be prudent to sell the property separately. . . . If I only had access -- I've only owned the property to the south side and I had no leverage from the north side, I think that it would actually cause me to, you know, 'diminue' my value even more because then I have no fight. I have no -- no reason why I can use those properties with the unity in use for agricultural purposes because -- and to be able to justify, you know, my tractors coming over to the southern side. I need a gate here. I need water from my north to the south side. I need, you know, access to extend irrigation lines. You lose that. You lose that. So, to answer the question, no, there's no -- there's not sufficient data; but based on all my research, all my evidence, all my expertise in this region, sir, it would be prudent for them to sell it entirely because selling it separately, I think Mr. Fuller would have to discount the value even further than what I've placed in my report.[48]

Mr. Garza himself therefore demonstrates why he violated the unit rule and why his appraisal opinion with respect to Tracts RGV-MER-3002-1 and RGV-MER-3002-2 is inadmissible. Mr. Garza admitted that if Defendant had carved up his property and sold it as independent northern and southern parcels, Defendant would have to steeply discount at least the economic value of the southern unit. Mr. Garza's own testimony shows the unreliability of his conclusion that the southern economic unit should be valued at $5,500 per acre. But even if such a conclusion was reliable, Mr. Garza's testimony regarding the inaccessibility and market undesirability of the southern economic unit, considered separately, shows why the subject property *must* be considered

---

[47] Dkt. No. 54-2 at 64.
[48] Dkt. No. 54-6 at 230:14–231:14.

as a unitary whole with a single per acre value for the whole unit—just as Mr. Garza treated the appraisal for Tract RGV-MER-4009-1.[49]

The Court is not persuaded that its December 20, 2021 opinion and order misapprehended either the law or facts applicable to Leonel Garza III. To the extent Defendant moves the Court to reconsider its opinion partly excluding Mr. Garza's opinions, testimony, and reports, such motion is **DENIED**. The Court now turns to Defendant's other argument for reconsideration.

### 2. *Summary Judgment Issues*

Defendant argues that, in its earlier summary judgment motion, it moved the Court to issue numerous rulings concerning the propriety of Plaintiff's installation of a bollard wall on Defendant's property, such as that Plaintiff lacked the right to install the bollard wall.[50] Defendant argues that the Court failed to rule on the issue, but should do so because "[t]he issue of whether Plaintiff had the easement right to install the bollard fence is relevant to just compensation even if Defendant is not entitled to be compensated for the fence."[51] In a footnote, Defendant again attacks the Court's interpretation of the law, arguing that the Court's December 20th holding[52] that equitable principles precluded Defendant from recovering for the value of the bollard wall on Defendant's property, even if Plaintiff constructed the bollard wall tortiously or while committing trespass, failed to take account of a Supreme Court precedent.[53]

To recount, Defendant sought summary judgment against Plaintiff arguing that "'Plaintiff did not have the property right to install the bollard fence [located on Defendant's property]; and that the bollard fence was owned by Defendant prior to the takings in this case,' so Defendant is

---

[49] Dkt. No. 54-1 at 50.
[50] Dkt. No. 73 at 13, ¶ 19 (quoting Dkt. No. 53 at 10, ¶ 24).
[51] *Id.* at 14, ¶ 20.
[52] Dkt. No. 72 at 28–29, § III.b.2.
[53] Dkt. No. 73 at 14 n.5 (citing *Searl v. Sch. Dist. No. 2, of Lake Cnty.*, 133 U.S. 553 (1890)).

entitled to some measure of just compensation (to be established by the jury) for the bollard fence improvement that Plaintiff wrongfully placed upon Defendant's land."[54] The Court rejected this argument and denied summary judgment because the Fifth Circuit held that an authority with the power of eminent domain need not pay to take an improvement the authority constructed, even if the authority constructed the improvement tortiously or while committing trespass.[55] Defendant argues the Fifth Circuit authority the Court relied upon conflicts with a Supreme Court holding.[56] In that case, *Searl v. School-District No. 2 of Lake County*, a school district believed it had acquired proper title to certain lands in 1881, but an individual disputed the school district's claim to the lands.[57] In spite of the disputed title, the school district completed construction of a schoolhouse on the lands in 1882.[58] In 1884, the individual sought to eject the school district from his perceived lands, but the school district moved to take the lands and the schoolhouse improvement by eminent domain.[59] The individual argued that, if the lands were condemned by the school district in 1884, then he should be entitled to $3,000 for the value of the unimproved lands plus $40,000 for the value of the schoolhouse improvement thereupon.[60] The lower court held that it would be inequitable to require the school district to pay, out of the public purse, both $40,000 to construct the schoolhouse and $40,000 again to the individual claimant upon the taking.[61] The Supreme Court affirmed.[62] The affirming opinion does state in dicta, upon which Defendant relies, "if the entry upon land is a naked trespass, buildings permanently attached to the soil become the property

---

[54] Dkt. No. 72 at 22 (quoting Dkt. No. 53 at 10–11, ¶ 24).
[55] *Id.* at 28–29 (quoting *Anderson-Tully Co. v. United States*, 189 F.2d 192, 197 (5th Cir. 1951)).
[56] Dkt. No. 73 at 14 n.5.
[57] *Searl*, 133 U.S. at 555–57.
[58] *Id.* at 556.
[59] *Id.* at 555–57.
[60] *Sch.-Dist. No. 2 of Lake Cnty. v. Searl*, 38 F. 18, 18 (C.C.D. Colo. 1889).
[61] *Id.* at 18–19.
[62] *Searl*, 133 U.S. at 565.

of the owner of the latter. The trespasser can acquire no rights by his tortious acts."[63] However, the Supreme Court ultimately concludes that:

> the sole question is whether the circuit court erred in holding that the [individual] could not be allowed for the improvements. We think that in this there was no error. In our judgment, the technical rule of law invoked to sustain the defendant's contention that he owned the school-house was inapplicable, **and the value of the improvements could not justly be included in the compensation**.[64]

Instead of relying on the dicta in *Searl* or ascertaining the nuance between its holding and dicta, the Court, in its December 20th opinion, relied upon the "unambiguous pronouncement of the Fifth Circuit," consistent with the *ratio decidendi* in *Searl*, that an authority with the power of eminent domain should not be compelled to pay for constructing an improvement and later pay again for condemning the land upon which the improvement is located.[65]

Given the foregoing discussion, the Court did not misinterpret *Searl* by declining to apply *Searl*'s dicta in contravention of *Searl*'s holding or the Fifth Circuit's holding.[66] Nevertheless, Defendant argues that there is still a fact issue for the jury concerning the bollard wall. Specifically, Defendant argues that Plaintiff's expert Justin Bierschwale erroneously assumed "that Plaintiff was within its rights when it originally put the fence in," which affects his appraisal estimate, which Defendant intends to cross examine him upon, so Defendant believes that the Court must construe the legal import of easements relevant to the bollard wall to allow Defendant's cross examination of Plaintiff's expert.[67] Plaintiff responds that the Court already resolved this argument.[68] Contrary to both parties' assertions, this is a brand new argument, not an argument for reconsideration. Defendant's original motion for partial summary judgment did not mention

---

[63] *Id.* at 561–62.
[64] *Id.* at 565 (emphasis added).
[65] Dkt. No. 72 at 28–29 (quoting *Anderson-Tully Co. v. United States*, 189 F.2d 192, 197 (5th Cir. 1951)).
[66] But even considering this dicta, Plaintiff here has a pre-existing easement on the property; Defendant's contention being that the easement does not include the right to build a bollard wall. There is no naked trespass here.
[67] Dkt. No. 73 at 14–15, ¶ 20.
[68] Dkt. No. 76 at 13, ¶ 24.

"Bierschwale" or even "Plaintiff's expert," and offered no coherent argument regarding Plaintiff's expert's assumption.[69] In any event, this is not an issue for reconsideration or summary judgment. Defendant is really seeking a Federal Rules of Evidence 104(a) and 402 judgment on whether its proposed line of cross examination will be permitted. Defendant may raise this issue in a timely motion in limine;[70] this opinion is not the proper vehicle for deciding the issue.

## III. HOLDING

The Court **DENIES** Defendant's motion[71] to reconsider the Court's December 20, 2021 opinion and order for the foregoing reasons.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 25th day of January 2022.

Micaela Alvarez
United States District Judge

---

[69] *See* Dkt. No. 53.
[70] *See* Dkt. No. 71.
[71] Dkt. No. 73.